UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

C.A.04-10935DPW

DOREEN SCOLASTICO,                )
                Plaintiff,     )
                                  )
v.                                )
                                  )
READING HOUSING                   )
AUTHORITY,                        )
                Defendant.    )

### AFFIDAVIT OF LYN E. WHYTE

1. My name is Lyn E. Whyte. I am over the age of 18 and I understand the meaning of an oath.

2. I am the Executive Director of the Reading Housing Authority (RHA). I have held this position for almost 4 years.

3. Ms. Scolastico's Section 8 voucher was terminated because she committed fraud in failing to report a change in her household composition. The RHA takes fraud very seriously.

4. Not only did Ms. Scolastico fail to report this change but, she was provided with an opportunity to inform the RHA of this household change at her recertification on November 17, 2003, when she was asked if she needed to report any changes in her household. At that time her son had not been living with her for approximately ten months.

5. The decision to terminate Ms. Scolastico's voucher was not impacted in any way by the impending changes in HUD's funding of the Section 8 program. In fact, at the time I made this decision, I had not received an official notice from HUD (which was received on April

22, 2004) and certainly had not yet begun trying to determine how I would continue to fund this program.

6. I grappled with the decision to terminate Ms. Scolastico's Section 8 voucher, and only because I was confronted with overwhelming evidence of her affirmatively reporting that her son was living with her, when he was not, did I determine that I had no choice other than to terminate Ms. Scolastico's voucher.

7. To be forced to reinstate a voucher that RHA feels was terminated with just cause will undermine the integrity of this program and the integrity of this agency. It will compromise our ability to attain and maintain a high level of standards and professionalism in our day-to-day management of all program components. It will also undermine our efforts to promote a housing program which maintains quality service and integrity while providing an incentive to private property owners to rent to very low income families who we promote as willing to abide by the rules and regulations of these programs. Just as important, such a decision will undermine my goal to administer an efficient, high-performing agency through continuous improvement of the PHA's support systems and commitment to our employees and their personal development.

8. To render such a decision will set a precedent; participants will be sent the message that there are, in fact, no consequences to their actions and the "system", as we know it, will support that mindscape; staff will feel that there is no need for them to undertake all the measures necessary to promote fair housing and the opportunity for very low-income families of all ethnic backgrounds to experience freedom of housing choice. "Turning the other cheek" will become part of the job and take the place of "Denial or Termination of Assistance" due to "Failure to Provide" as required under "Family Obligation".

9. If the Reading Housing Authority were ordered to provide Doreen Scolastico with a one bedroom voucher it would create an administrative and financial hardship on the RHA.

10. In order for Ms. Scolastico to succeed at her summary process eviction hearing regarding her privately owned apartment at the Avalon Oaks Complex in Wilmington, Massachusetts the RHA would have to pay its share of all monies owed going back to March 1, 2004 which calculates to be approximately $3500. In addition, the RHA would need to enter into a new leasing arrangement with Avalon Oaks for Ms. Scolastico, as her current lease was terminated by her landlord several months ago.

11. As of April 30, 2004 the RHA Section 8 program is experiencing a Net Operating Loss of $4918.00. (this figure does not reflect proposed funding cuts expected in fiscal year 2005 which begins on July 1, 2004). There is not enough money in our operating reserve to cover administrative cuts let alone additional cuts in rent funding expected in the near future. HUD is aware of our situation in this regard and as of May 25, 2004 has offered no advice or direction on how do handle this financial crisis. Every agency is experiencing the same problems and no one has a solution.

12. Additionally, according to the most recent financial information of the Plaintiff available to the RHA, it is clear that the Plaintiff could not afford to continue to rent her current apartment with a one bedroom voucher. The calculation supporting this statement is based upon the following: If the RHA were ordered to provide the Plaintiff with a one bedroom voucher, according to the Section 8 program guidelines, the RHA would use the payment standard for a one-bedroom unit for Wilmington (because that is the unit size the voucher is issued for) along with a utility allowance for a two-bedroom unit. (A family's utility allowance is *determined by*

the size of the unit the family actually leases not the size on the family's voucher.) 24 CFR982.517 (d) (1).

13. The one bedroom payment standard used for Wilmington, MA is $1135, including all utilities. (This calculation uses the utility allowance for a two bedroom unit as required by the code of federal regulations.) *See* Worksheet for Housing Choice Voucher Program Contributions attached hereto as Exhibit A.

14. According to the RHA's calculations, the Plaintiff would have to pay approximately four hundred and eighty five dollars ($485) per month just for her rent and utilities. According to most recent records, including her son David's income (which she is no longer receiving- her father Thomas Scolastico is the new designated payee for David's income) the Plaintiff's net monthly income is approximately eight hundred sixty four dollars ($864).

15. The Plaintiff also has a monthly car payment of approximately two hundred and sixty dollars per month ($260). Therefore, after the Plaintiff satisfied her monthly rent and car payments she would have no more than approximately one hundred and twenty dollars ($120) per month for all other living expenses combined.

16. Accordingly, Ms. Scolastico would be unable to pay her share of the rent on her current apartment and would be forced to move to a new privately leased apartment immediately.

17. As a part of the Section 8 program, the RHA enters into housing payment contracts with private landlords. The RHA pays the private landlord directly the value of the participant's voucher. The housing payment contract is for the length of the twelve (12) month lease and must be entered into with good faith. The RHA would be unable to enter into a twelve month agreement with a private landlord in good faith because it is involved in this litigation and is attempting to uphold its termination of Ms. Scolastico's housing voucher.

18.     Alternatively, the RHA does not have any available one bedroom apartments in its State public housing elderly and disabled apartment complexes. The RHA is not aware of any vacancies that should occur in the next few months. Additionally, all tenants in public housing must pass a criminal background check, and upon information and belief, Ms. Scolastico would not pass this check and would not be qualified to reside in public housing.

19.     While it is true that the RHA is concerned about HUD reducing its funding of the voucher program, at the time of Ms. Scolastico's termination that in no way entered into our decision to terminate her voucher. In fact, the RHA has a history of working with Ms. Scolastico when she has not been entirely forthright with the Housing Authority, including entering into a flexible payment program for Ms. Scolastico to repay funds owed to the RHA due to her failure to report additional income.

20.     I have met with the RHA's accountants, and reviewed the money available for rents. The RHA does not have any rent reserves. The RHA anticipates that it will be able to pay the rents due under their individual contracts as of June 1, 2004, but in fact we are not even certain of this.

21.     Further, should the Court order the RHA to administer a one bedroom voucher, I respectfully request that another housing authority administer the voucher. Ms. Scolastico has a history of using abusive language with my staff, and as a result of this hearing, a very valued staff member has tendered her resignation. It would be an extreme hardship on the RHA to administer the Plaintiff's voucher, particularly considering the contentious nature of this litigation.

ID # 395075v01/7204-104/ 05.25.2004

**Signed under the pains and penalties of perjury .**

DATED:  5/25/04                               /s/ Lyn E. Whyte
                                              Lyn E. Whyte, Executive Director

ID # 395075v01/7204-104/ 05.25.2004

## CERTIFICATE OF SERVICE

      I, Carrie J. Campion, certify that I delivered by electronic mail and first class mail a copy of the within on May 25, 2004, to Jane K. Alper, Esq., Disability Law Center, 11 Beacon Street, Boston, MA 02108

                                                 /s/ Carrie Campion  
                                                 Carrie J. Campion

ID # 395075v01/7204-104/ 05.25.2004